TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective,*
*and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x

Baoji Zhang, and
Guo Dong Yao
*on behalf of themselves and others similarly situated,*
                                                    Plaintiffs,

                                v.

New Beijing Wok, Inc.
          d/b/a Beijing Wok,
New Beijing Wok #1 Inc.
          d/b/a Beijing Wok,
#1 Beijing Wok Inc.
          d/b/a Beijing Wok,
Shanghai Inc.
          d/b/a Shanghai Chinese Restaurant,
Chai Wai Cheng
          a/k/a Chai-Wai Cheng,
Ching Sau Siu,
Yao Chor Yeung, and
Mei Kam Siu,
                                          Defendants.
------------------------------------------------------------- x

**Case No: 17-cv-9465**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

        Plaintiffs BAOLI ZHANG and GUO DONG YAO (hereinafter referred to as

"Plaintiffs"), on behalf of themselves and others similarly situated, by and through their

attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants NEW BEIJING

WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING

WOK INC. d/b/a Beijing Wok, SHANGHAI INC. d/b/a Shanghai Chinese Restaurant, CHAI

WAI CHENG a/k/a Chai-Wai Cheng, CHING SAU SIU, YAO CHOR YEUNG, and MEI KAM

SIU (hereinafter referred to as "Defendants").

## INTRODUCTION

1.      This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.* and of the New York Labor Law ("NYLL") and implementing New York Codes, Rules, and Regulations ("NYCRR"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, NYLL, and NYCRR by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, wages for each hour worked, minimum wage for each hour worked, overtime for all hours worked in excess of forty (40) in each workweek, and spread-of-hours for all hours worked in excess of ten (10) in each workday.

3.      Defendants willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including time worked in excess of forty (40) hours per week and ten (10) hours per day.

4.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid overtime, (4) liquidated damages; (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs.

5.      Plaintiffs further allege pursuant to the NYLL § 650 *et seq.* and 12 NYCRR § 146 that they are entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid overtime, (4) unpaid spread-of-hours; (5) liquidated damages equal to one hundred percent (100%) of the sum of unpaid wages, unpaid overtime, and unpaid spread-of-hours under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (7) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a wage statement that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day (8) nine percent (9%) simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") NYCPLR § 5004, (9) post-judgment interest, and (10) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**PLAINTIFFS**

8.      Plaintiff BAOLI ZHANG is a resident of Queens County, New York and was employed by Defendants as a deliveryman at Beijing Wok located at 1324 2nd Avenue, New York, NY 10021 and as a deliveryman at Shanghai Chinese Restaurant located at 1388 Second Avenue South Store, New York, NY 10021.

9.      Plaintiff GUO DONG YAO is a resident of Queens County, New York and was employed by Defendants as a deliveryman at Beijing Wok located at 1324 2nd Avenue, New York, NY 10021 and as a deliveryman at Shanghai Chinese Restaurant located at 1388 Second Avenue South Store, New York, NY 10021.

**DEFENDANTS**

*Corporate Defendants*

10.    Defendant NEW BEIJING WOK, INC. d/b/a Beijing Wok is a domestic business corporation organized under the laws of the State of New York with a principal address at 1324 Second Avenue, Ground Floor, New York, NY 10021.

11.    Upon information and belief, NEW BEIJING WOK, INC. d/b/a Beijing Wok is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

12.    Upon information and belief, NEW BEIJING WOK, INC. d/b/a Beijing Wok purchased and handled goods moved in interstate commerce.

13.    Defendant NEW BEIJING WOK #1 INC. d/b/a Beijing Wok was a domestic business corporation organized under the laws of the State of New York with a principal address at 1324 Second Avenue, New York, NY 10021.

14.    Upon information and belief, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

15.    Upon information and belief, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok purchased and handled goods moved in interstate commerce.

16.    Defendant #1 BEIJING WOK INC. d/b/a Beijing Wok was a domestic business corporation organized under the laws of the State of New York with a principal address at 1324 Second Avenue, New York, NY 10021.

17.    Upon information and belief, #1 BEIJING WOK INC. d/b/a Beijing Wok was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18.     Upon information and belief, #1 BEIJING WOK INC. d/b/a Beijing Wok purchased and handled goods moved in interstate commerce.

19.     Defendant <u>SHANGHAI INC. d/b/a</u> Shanghai Chinese Restaurant is a domestic business corporation organized under the laws of the State of New York with a principal address at 1388 Second Avenue, South Store, New York, NY 10021.

20.     Upon information and belief, SHANGHAI INC. d/b/a Shanghai Chinese Restaurant is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

21.     Upon information and belief, SHANGHAI INC. d/b/a Shanghai Chinese Restaurant purchased and handled goods moved in interstate commerce.

### *Individual Defendants*

22.     The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendants and being among the ten largest corporate shareholders are individually responsible for unpaid wages under the New York Business Corporation Law ("NYBSC") § 630(a).

23.     CHAI WAI CHENG a/k/a Chai-Wai Cheng, known as "Boss" to Plaintiffs, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC. d/b/a Shanghai Chinese Restaurant.

24.     Upon information and belief, CHAI WAI CHENG a/k/a Chai-Wai Cheng was the founder of Beijing Wok.

25.     CHAI WAI CHENG a/k/a Chai-Wai Cheng is the Chief Executive Officer of NEW

BEIJING WOK, INC. d/b/a Beijing Wok.

26.    CHAI WAI CHENG a/k/a Chai-Wai Cheng actually hired Plaintiffs.

27.    CHAI WAI CHENG a/k/a Chai-Wai Cheng actually distributed employees', including

Plaintiffs', pay packets.

28.    CHAI WAI CHENG a/k/a Chai-Wai Cheng is in charge of and actively manages all areas

of Beijing Wok. Throughout Plaintiffs' employment, CHAI WAI CHENG a/k/a Chai-Wai

Cheng was present in Beijing Wok all day and every day they worked.

29.    CHAI WAI CHENG a/k/a Chai-Wai Cheng acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29

C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and

severally liable with NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1

INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC.

d/b/a Shanghai Chinese Restaurant.

30.    CHING SAU SIU, known as "Lady Boss" to Plaintiffs, (1) had the power to hire and fire

employees, (2) supervised and controlled employee work schedules and conditions of

employment, (3) determined employee rates and methods of payment, and (4) maintained

employee records at NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1

INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC.

d/b/a Shanghai Chinese Restaurant.

31.    Upon information and belief, CHING SAU SIU is the wife of CHAI WAI CHENG a/k/a

Chai-Wai Cheng.

32.    CHING SAU SIU is in charge of and actively manages all areas of Beijing Wok.

Throughout Plaintiffs' employment, CHING SAU SIU was present in Beijing Wok every day

they worked. Prior to 2013, CHING SAU SIU would stay all day to manage Beijing Wok. Beginning in 2013, CHING SAU SIU would leave in the early afternoon.

33. CHING SAU SIU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC. d/b/a Shanghai Chinese Restaurant.

34. YAO CHOR YEUNG (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC. d/b/a Shanghai Chinese Restaurant.

35. Upon information and belief YAO CHOR YEUNG co-founded Beijing Wok with CHAI WAI CHENG a/k/a Chai-Wai Cheng.

36. YAO CHOR YEUNG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC. d/b/a Shanghai Chinese Restaurant.

37. MEI KAM SIU (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee

rates and methods of payment, and (4) maintained employee records at NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC. d/b/a Shanghai Chinese Restaurant.

38.    Upon information and belief, MEI KAM SIU is the younger brother of CHING SAU SIU.

39.    Upon information and belief, MEI KAM SIU is the founder of Shanghai Chinese Restaurant.

40.    MEI KAM SIU is in charge of and actively manages all areas of Shanghai Chinese Restaurant.

41.    MEI KAM SIU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, #1 BEIJING WOK INC. d/b/a Beijing Wok, and SHANGHAI INC. d/b/a Shanghai Chinese Restaurant.

## **STATEMENT OF FACTS**

**DEFENDANTS COMMITTED THE FOLLOWING ALLEGED ACTS KNOWINGLY, INTENTIONALLY, AND WILLFULLY AGAINST THE PLAINTIFF, THE FLSA COLLECTIVE, AND THE CLASS**

42.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees for each hour worked.

43.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

44.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

45.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

46.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

47.     At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

48.     Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

49.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

50.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  the employee's name; the name of the employer;  the address and phone number of the employer;  the employee's rate or rates of pay and basis thereof; the employee's gross wages;   the employee's deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; the employee's regular hourly rate or

rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular

hours worked, and the employee's number of overtime hours worked.

51.     Defendants knew that the nonpayment of wages for all hours worked and the nonpayment

of wages at one and one-half time (1.5x) employees' regular rates would financially injure

Plaintiffs and similarly situated employees, and violate state and federal laws.

52.     At all relevant times, Defendants failed to post the required New York State Department

of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

53.     Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated

employees with notices of their exact date of termination and of the cancellation of employee

benefits connected with termination within five (5) working days after their dates of termination.

**PLAINTIFF BAOLI ZHANG**

54.     From on or about November 16, 2009 to July 31, 2017, Plaintiff BAOLI ZHANG was

employed by Defendants as a deliveryman at Beijing Wok located at 1324 2nd Avenue, New

York, NY 10021 and as a deliveryman at Shanghai Chinese Restaurant located at 1388 Second

Avenue South Store, New York, NY 10021.

55.     Plaintiff BAOLI ZHANG was hired by CHAI WAI CHENG a/k/a Chai-Wai Cheng.

56.     At the time he was hired, Plaintiff BAOLI ZHANG was not given a written notice in his

primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis

thereof;  allowances claimed as part of the minimum wage;  the regular pay day designated by

the employer;  the name of the employer;  any "doing business as" names used by the employer;

 the physical and mailing addresses of the employer's main office or principal place of business;

and the telephone number of the employer.

57.     Throughout his employment, Plaintiff BAOLI ZHANG was not given a written notice

regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed

as part of the minimum wage; the regular pay day designated by the employer; the name of the

employer; any "doing business as" names used by the employer; the physical and mailing

addresses of the employer's main office or principal place of business; and the telephone number

of the employer.

58.     Plaintiff BAOLI ZHANG was given verbal, not written, notice of his regular schedule

and rate of pay at the time he was hired, and when his schedule or pay rate would change.

59.     From on or about November 16, 2009 to April 30, 2010, Plaintiff BAOLI ZHANG's

regular work schedule ran from 10:30 to 23:00, for twelve and one half (12.5) hours, six (6) days

per week, Sundays through Fridays, with Saturdays off.

60.     From on or about May 1, 2010 to December 31, 2013, Plaintiff BAOLI ZHANG's

regular work schedule ran:

    a.     From 10:30 to 23:00, for twelve and one half (12.5) hours, five (5) days per week;

    and

    b.     From 10:30 to 16:30, for six (6) hours, one (1) day per week.

61.     From on or about January 1, 2014 to July 31, 2017, Plaintiff BAOLI ZHANG was

regularly scheduled to work each Monday, Tuesday, Friday, and Saturday:

    a.     From 10:45 to 21:00, for ten and one quarter (10.25) hours (the "early shift"),

    every other workday; alternating with

    b.     From 10:45 to 22:45, for twelve (12) hours (the "late shift"), every other

    workday;

If Plaintiff BAOLI ZHANG's day to work the late shift fell on a Friday, he would be required to

work until 23:00, for twelve and one quarter (12.25) hours.

62.     Throughout his employment, Plaintiff BAOLI ZHANG was not afforded any regular rest

or meal breaks. Plaintiff BAOLI ZHANG ate when he could during the day, when business was slow.

63.    From on or about November 16, 2009 to April 30, 2010, Plaintiff BAOLI ZHANG worked approximately seventy-five (75) hours per week.

64.    From on or about May 1, 2010 to December 31, 2013, Plaintiff BAOLI ZHANG worked approximately sixty-eight and one half (68.5) hours per week.

65.    From on or about January 1, 2014 to July 31, 2017, Plaintiff BAOLI ZHANG worked approximately forty-four and one half (44.5) hours per week.

66.    Plaintiff BAOLI ZHANG was promised a monthly salary, to be paid in semi-monthly cash installments on the first and fifteenth day of each month.

67.    From on or about November 16, 2009 to December 31, 2009, Plaintiff BAOLI ZHANG was promised a salary of eight hundred dollars ($800.00) per month.

68.    From on or about January 1, 2010 to December 31, 2010, Plaintiff BAOLI ZHANG was promised a salary of nine hundred dollars ($900.00) per month.

69.    From on or about January 1, 2011 to December 31, 2012, Plaintiff BAOLI ZHANG was promised a salary of one thousand dollars ($1,000.00) per month.

70.    From on or about January 1, 2013 to December 31, 2015, Plaintiff BAOLI ZHANG was promised a salary of one thousand one hundred dollars ($1,100.00) per month.

71.    From on or about January 1, 2016 to December 31, 2016, Plaintiff BAOLI ZHANG was promised a salary of one thousand two hundred dollars ($1,200.00) per month.

72.    From on or about January 1, 2017 to July 31, 2017, Plaintiff BAOLI ZHANG was promised a salary of one thousand three hundred dollars ($1,300.00) per month.

73.    However, Plaintiff BAOLI ZHANG was never paid his full promised salary. Plaintiff

BAOLI ZHANG was instead paid on the following basis: the amount of his promised salary would be divided by thirty (30) (regardless of whether the month for which he was being paid had 28, 29, 30, or 31 days, and regardless of how many hours Plaintiff BAOLI ZHANG worked per day), and the resulting amount would be multiplied by the number of days he worked in the pay period to determine his pay.

74.    Throughout his employment, Defendants failed to provide Plaintiff BAOLI ZHANG with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  his name; the name of the employer;  the address and phone number of the employer;  his rate or rates of pay and basis thereof; his  gross wages;  his deductions; allowances, if any, claimed as part of the minimum wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his number of regular hours worked, and his number of overtime hours worked.

75.    At no time during Plaintiff BAOLI ZHANG's employment did Defendants inform him that they were taking any credits, including tip credits, towards the minimum wage.

76.    Throughout his employment, Plaintiff BAOLI ZHANG was not paid overtime for hours worked above forty (40) in any given workweek.

77.    Throughout his employment, Plaintiff BAOLI ZHANG was not paid spread of hours for workdays that began and ended ten (10) hours apart.

78.    While employed by Defendants, Plaintiff BAOLI ZHANG was not exempt under federal and state laws requiring employers to pay employees overtime.

79.    Plaintiff BAOLI ZHANG's primary duties as a deliveryman were to make deliveries in a twenty-block (1-mile) radius from Beijing Wok.

80.    From on or about November 11, 2009 to December 31, 2012, Plaintiff BAOLI ZHANG

made between sixty-five (65) and seventy (70) deliveries per day.

81.    From on or about November 11, 2009 to December 31, 2012, Plaintiff BAOLI ZHANG drove between one hundred thirty (130) and one hundred forty (140) miles per day making deliveries.

82.    From on or about January 1, 2013 to December 31, 2015, Plaintiff BAOLI ZHANG made about sixty (60) deliveries per day.

83.    From on or about January 1, 2013 to December 31, 2015, Plaintiff BAOLI ZHANG drove about one hundred twenty (120) miles per day making deliveries.

84.    From on or about January 1, 2016 to July 31, 2017, Plaintiff BAOLI ZHANG made about fifty (50) deliveries per day.

85.    From on or about January 1, 2016 to July 31, 2017, Plaintiff BAOLI ZHANG made drove about one hundred (100) miles per day making deliveries.

86.    At the time he was hired, Plaintiff BAOLI ZHANG used a bicycle to make deliveries for the benefit of Defendants.

87.    Between January 1, 2010 and July 31, 2017, Plaintiff BAOLI ZHANG purchased three (3) motorcycles to use making deliveries for the benefit of the Defendants, each at a cost of about one thousand five hundred dollars ($1,500.00).

88.    Between January 1, 2010 and July 31, 2017, Plaintiff BAOLI ZHANG purchased two (2) batteries per year at a cost of four hundred and fifty dollars ($450.00) per battery.

89.    Throughout his employment, Defendants did not compensate Plaintiff BAOLI ZHANG for the costs of purchasing, maintaining, or fueling his motorcycles, and did not pay mileage.

90.    CHAI WAI CHENG a/k/a Chai-Wai Cheng did, however, provide Plaintiff BAOLI ZHANG with a safety vest and safety helmet.

91.    In addition to his primary duties as a deliveryman, Plaintiff BAOLI ZHANG was required to perform non-tipped side work including: peeling shrimp, cleaning and trimming string beans, making dumplings, bottling sauces, and carrying sodas and other drinks from one place to another within the restaurant.

92.    From on or about January 1, 2014 to July 31, 2017, if Plaintiff BAOLI ZHANG's "early shift" fell on a Wednesday, he was required to clean soup containers and other kitchen equipment for use by the chefs.

93.    Plaintiff BAOLI ZHANG was required to perform more than two (2) hours of non-tipped side work every day.

94.    Beginning in 2009, deliverymen usually based out of Beijing Wok, including Plaintiff BAOLI ZHANG, were occasionally assigned to deliver for Shanghai Chinese Restaurant.

95.    If Beijing Wok suffered a blackout or other difficulty that made it impossible to cook and deliver orders, Beijing Wok's entire staff, including Plaintiff BAOLI ZHANG, were required to move to Shanghai Chinese Restaurant until the difficulty passed, and keep working.

96.    Plaintiff BAOLI ZHANG was not given a written notice of his exact date of termination and of the cancellation of employee benefits connected with termination within five (5) working days after his date of termination.

**PLAINTIFF GUO DONG YAO**

97.    From on or about January 1, 2004 to July 31, 2017, Plaintiff GUO DONG YAO was employed by Defendants as a deliveryman at Beijing Wok located at 1324 2nd Avenue, New York, NY 10021 and as a deliveryman at Shanghai Chinese Restaurant located at 1388 Second Avenue South Store, New York, NY 10021.

98.    Plaintiff GUO DONG YAO was hired by CHAI WAI CHENG a/k/a Chai-Wai Cheng.

99.     At the time he was hired, Plaintiff GUO DONG YAO was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof;  allowances claimed as part of the minimum wage;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

100.    Throughout his employment, Plaintiff GUO DONG YAO was not given a written notice regarding all of the following items: his rate or rates of pay and basis thereof;  allowances claimed as part of the minimum wage;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

101.    Plaintiff GUO DONG YAO was given verbal, not written, notice of his regular schedule and rate of pay at the time he was hired, and when his schedule or pay rate would change.

102.    From on or about January 1, 2004 to April 30, 2010, Plaintiff GUO DONG YAO's regular work schedule ran from 10:30 to 23:00, for twelve and one half (12.5) hours, six (6) days per week, Sundays through Fridays, with Saturdays off.

103.    From on or about May 1, 2010 to December 31, 2013, Plaintiff GUO DONG YAO's regular work schedule ran:

    a.      From 10:30 to 23:00, for twelve and one half (12.5) hours, five (5) days per week; and

    b.      From 10:30 to 16:30, for six (6) hours, one (1) day per week.

104.    From on or about January 1, 2014 to the present time, Plaintiff GUO DONG YAO was regularly scheduled to work each Monday, Tuesday, Friday, and Saturday:

    a.    From 10:45 to 21:00, for ten and one quarter (10.25) hours (the "early shift"), every other workday; alternating with

    b.    From 10:45 to 22:45, for twelve (12) hours (the "late shift"), every other workday;

If Plaintiff GUO DONG YAO's day to work the late shift fell on a Friday, he would be required to work until 23:00, for twelve and one quarter (12.25) hours.

105.    Throughout his employment, Plaintiff GUO DONG YAO was not afforded any regular rest or meal breaks. Plaintiff GUO DONG YAO ate when he could during the day, when business was slow.

106.    From on or about January 1, 2004 to April 30, 2010, Plaintiff GUO DONG YAO worked approximately seventy-five (75) hours per week.

107.    From on or about May 1, 2010 to December 31, 2013, Plaintiff GUO DONG YAO worked approximately sixty-eight and one half (68.5) hours per week.

108.    From on or about January 1, 2014 to the present time, Plaintiff GUO DONG YAO worked approximately forty-four and one half (44.5) hours per week.

109.    Plaintiff GUO DONG YAO was promised a monthly salary, to be paid in semi-monthly cash installments on the first and fifteenth day of each month.

110.    From on or about January 1, 2004 to December 31, 2009, Plaintiff GUO DONG YAO was promised a salary of nine hundred dollars ($900.00) per month.

111.    From on or about January 1, 2010 to December 31, 2010, Plaintiff GUO DONG YAO was promised a salary of one thousand dollars ($1,000.00) per month.

112. From on or about January 1, 2011 to December 31, 2012, Plaintiff GUO DONG YAO was promised a salary of one thousand one hundred dollars ($1,100.00) per month.

113. From on or about January 1, 2013 to December 31, 2015, Plaintiff GUO DONG YAO was promised a salary of one thousand two hundred dollars ($1,200.00) per month.

114. From on or about January 1, 2016 to December 31, 2016, Plaintiff GUO DONG YAO was promised a salary of one thousand three hundred dollars ($1,300.00) per month.

115. From on or about January 1, 2017 to the present time, Plaintiff GUO DONG YAO was promised a salary of one thousand four hundred dollars ($1,400.00) per month.

116. However, Plaintiff GUO DONG YAO was never paid his full promised salary. Plaintiff GUO DONG YAO was instead paid on the following basis: the amount of his promised salary would be divided by thirty (30) (regardless of whether the month for which he was being paid had 28, 29, 30, or 31 days, and regardless of how many hours Plaintiff GUO DONG YAO worked per day), and the resulting amount would be multiplied by the number of days he worked in the pay period to determine his pay.

117. Throughout his employment, Defendants failed to provide Plaintiff GUO DONG YAO with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages; his name; the name of the employer; the address and phone number of the employer; his rate or rates of pay and basis thereof; his gross wages; his deductions; allowances, if any, claimed as part of the minimum wage; net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay; his number of regular hours worked, and his number of overtime hours worked.

118. At no time during Plaintiff GUO DONG YAO's employment did Defendants inform him that they were taking any credits, including tip credits, towards the minimum wage.

119.    Throughout his employment, Plaintiff GUO DONG YAO was not paid overtime for hours worked above forty (40) in any given workweek.

120.    Throughout his employment, Plaintiff GUO DONG YAO was not paid spread of hours for workdays that began and ended ten (10) hours apart.

121.    While employed by Defendants, Plaintiff GUO DONG YAO was not exempt under federal and state laws requiring employers to pay employees overtime.

122.    Plaintiff GUO DONG YAO's primary duties as a deliveryman were to make deliveries in a twenty-block (1-mile) radius from Beijing Wok.

123.    From on or about November 11, 2009 to December 31, 2012, Plaintiff GUO DONG YAO made between sixty-five (65) and seventy (70) deliveries per day.

124.    From on or about January 1, 2004 to December 31, 2012, Plaintiff GUO DONG YAO drove between one hundred thirty (130) and one hundred forty (140) miles per day making deliveries.

125.    From on or about January 1, 2013 to December 31, 2015, Plaintiff GUO DONG YAO made about sixty (60) deliveries per day.

126.    From on or about January 1, 2013 to December 31, 2015, Plaintiff GUO DONG YAO drove about one hundred twenty (120) miles per day making deliveries.

127.    From on or about January 1, 2016 to the present time, Plaintiff GUO DONG YAO made about fifty (50) deliveries per day.

128.    From on or about January 1, 2016 to the present time, Plaintiff GUO DONG YAO made drove about one hundred (100) miles per day making deliveries.

129.    Throughout his employment, Defendants did not compensate Plaintiff GUO DONG YAO for the costs of purchasing, maintaining, or fueling his delivery vehicles, and did not pay

mileage.

130.    CHAI WAI CHENG a/k/a Chai-Wai Cheng did, however, provide Plaintiff GUO DONG YAO with a safety vest and safety helmet.

131.    In addition to his primary duties as a deliveryman, Plaintiff GUO DONG YAO was required to perform non-tipped side work including: peeling shrimp, cleaning and trimming string beans, making dumplings, bottling sauces, and carrying sodas and other drinks from one place to another within the restaurant.

132.    From on or about January 1, 2014 to the present time, if Plaintiff GUO DONG YAO's "early shift" fell on a Wednesday, he was required to clean soup containers and other kitchen equipment for use by the chefs.

133.    Plaintiff GUO DONG YAO was required to perform more than two (2) hours of non-tipped side work every day.

134.    Beginning in 2009, deliverymen usually based out of Beijing Wok, including Plaintiff GUO DONG YAO, were occasionally assigned to deliver for Shanghai Chinese Restaurant.

135.    If Beijing Wok suffered a blackout or other difficulty that made it impossible to cook and deliver orders, Beijing Wok's entire staff, including Plaintiff GUO DONG YAO, were required to move to Shanghai Chinese Restaurant until the difficulty passed, and keep working.

136.    Plaintiff GUO DONG YAO was not given a written notice of his exact date of termination and of the cancellation of employee benefits connected with termination within five (5) working days after his date of termination.

**CORPORATE DEFENDANTS ARE JOINT EMPLOYERS**

137.    CHAI WAI CHENG a/k/a Chai-Wai Cheng and YAO CHOR YEUNG opened Beijing Wok on or about August 15, 1995.

138.    CHAI WAI CHENG a/k/a Chai-Wai Cheng and MEI KAM SIU, his brother-in-law, opened Shanghai Chinese Restaurant on or about May 27, 2009.

139.    From the opening of Shanghai Chinese Restaurant, CHAI WAI CHENG a/k/a Chai-Wai Cheng would assign employees of Beijing Wok to work in Shanghai Chinese Restaurant.

140.    Beginning in 2009, deliverymen usually based out of Beijing Wok, including Plaintiff GUO DONG YAO, were occasionally assigned to deliver for Shanghai Chinese Restaurant.

141.    If Beijing Wok suffered a blackout or other difficulty that made it impossible to cook and deliver orders, Beijing Wok's entire staff, including Plaintiff GUO DONG YAO, were required to move to Shanghai Chinese Restaurant until the difficulty passed, and keep working.

142.    Beijing Wok employees were frequently required to transfer materials, including uncooked food and other supplies, between Beijing Wok and Shanghai Chinese Restaurant, and Shanghai Chinese Restaurant employees were frequently required to transfer materials, including uncooked food and other supplies, between Shanghai Chinese Restaurant and Beijing Wok.

143.    Corporate Defendants NEW BEIJING WOK, INC. d/b/a Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a Beijing Wok, and #1 BEIJING WOK INC. d/b/a Beijing Wok, and Corporate Defendant SHANGHAI INC. d/b/a Shanghai Chinese Restaurant shared a high degree of interrelated and unified operation, a common management, centralized control of labor relations, common ownership, common control, common business purpose, and interrelated business goals.

**CORPORATE DEFENDANTS ARE SUCCESSOR EMPLOYERS**

144.    Upon information and belief, some time before July 31, 2017, CHAI WAI CHENG a/k/a Chai-Wai Cheng decided to close Beijing Wok.

145.    In preparation for the closure of Beijing Wok, NEW BEIJING WOK #1 INC. d/b/a

Beijing Wok was dissolved on August 31, 2016 and #1 BEIJING WOK INC. d/b/a Beijing Wok

was dissolved on October 26, 2016

146.    Shortly before July 31, 2017, CHAI WAI CHENG a/k/a Chai-Wai Cheng began

transferring employees, kitchen equipment, the restaurant's telephone number from Beijing Wok

to Shanghai Chinese Restaurant.

147.    Upon information and belief, a substantial portion of Shanghai Chinese Restaurant's

current staff is made up of former employees from Beijing Wok.

## COLLECTIVE ACTION ALLEGATIONS

148.    Plaintiffs bring this action individually and on behalf of all other current and former non-

exempt employees who have been or were employed by the Defendants for up to the last three

(3) years, through entry of judgment in this case (the "Collective Action Period") and who were

not compensated at least the hourly minimum wage and/or overtime for all hours worked in

excess of forty (40) per week (the "Collective Action Members.")

## CLASS ACTION ALLEGATIONS

149.    Plaintiffs bring their NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R.

Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after the date

that is six years before the filing of the Complaint in this case as defined herein (the "Class

Period").

150.    All said persons, including Plaintiffs, are referred to herein as the "Class."

151.    The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked, the

positions held, and the rate of pay for each Class member is also determinable from Defendants'

records. For purpose of notice and other purposes related to this action, their names and

addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

**Numerosity**

152.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the Class.

**Commonality**

153.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.    Whether Defendant employed Plaintiffs and the Class members within the meaning of the NYLL;

    b.    Whether Plaintiffs and the Class members were entitled to and paid minimum wage under the NYLL;

    c.    Whether Plaintiffs and the Class members were entitled to and paid overtime under the NYLL;

    d.    Whether Plaintiffs and the Class members were entitled to and paid spread-of-hours pay under the NYLL and NYCRR;

    e.    Whether Defendants maintained a policy, pattern, and/or practice of failing to provide statutory meal periods;

f.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and

payday at the start of Plaintiffs' and the Class members' employment, or timely

thereafter;

g.      Whether Defendants provided paystubs detailing the rates of pay and credits taken

toward the minimum wage to Plaintiffs and the Class members each payday;

h.      Whether Defendants provided a termination notice within five (5) working days

of Plaintiffs' and the Class members' terminations, of the dates of their terminations and

of the cancellations of any employee benefits; and

i.      At what common rate, or rates subject to a common method of calculation were

and are Defendants required to pay the Class members for their work.

***Typicality***

154.    Plaintiffs' claims are typical of those claims which could be alleged by any member of

the Class, and the relief sought is typical of the relief that would be sought by each member of

the Class in separate actions. All the Class members were subject to the same corporate policies

of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime. Defendants'

corporate-wide policies and practices affected all Class members similarly, and Defendants

benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs

and other Class members sustained similar losses, injuries, and damages arising from the same

unlawful policies, practices, and procedures.

***Adequacy***

155.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no

interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced

and competent in representing Plaintiffs in both class action and wage-and-hour employment

litigation cases.

*Superiority*

156.    A class action is superior to other available methods for the fair and efficient adjudication

of this controversy, particularly in the context of wage-and-hour litigation where individual Class

members lack the financial resources to vigorously prosecute a lawsuit against corporate

defendants. Class action treatment will permit a large number of similarly-situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expenses that numerous individual actions engender.

Because the losses, injuries, and damages suffered by each of the individual Class members are

small in the sense pertinent to class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual Class members to

redress the wrongs done to them. Further, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a

great expenditure of Court and public resources; however, treating the claims as a class action

would result in a significant saving of these costs. The prosecution of separate actions by

individual members of the Class would create a risk of inconsistent and/or varying adjudications

with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendants and resulting in the impairment of Class members' rights and the

disposition of their interests through actions to which they were not parties. The issues in this

action can be decided by means of common class-wide relief. In addition, if appropriate, the

Court can, and is empowered to, fashion methods to efficiently manage this action as a class

action.

157.    Defendants and other employers throughout the state of New York violate the NYLL.

Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Nonpayment of Minimum Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

158.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

159.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly-situated Collective Action Members, for some or all of the hours they worked.

160.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional amount as liquidated damages.

161.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage when they knew or should have known that such was due and that failing to do so would financially injure Plaintiffs and the Collective Action Members.

### COUNT II.
**[Violations of the New York Labor Law—Nonpayment of Minimum Wage
Brought on behalf of the Plaintiffs and the Rule 23 Class]**

162.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

163.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of NYLL NYLL §§ 2 and 651.

164.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Class for some or all of the hours they worked.

165.    Defendants knowingly and willfully violated Plaintiffs' and similarly-situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

166.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Nonpayment of Overtime
### Brought on behalf of the Plaintiffs and the FLSA Collective]

167.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

168.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for such employment at a rate not less than one and one-half times (1.5x) the regular rate at which he is employed, or one and one-half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

169.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

170.    Defendants' failure to pay Plaintiffs and the FLSA Collective overtime violated the FLSA.

171.    At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime at the statutory rate to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) per workweek, which violated and continues to violate the FLSA, 29 U.S.C §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

172.    The FLSA and supporting regulations require employers to notify employees of the requirements of the employment law. 29 C.F.R. § 516.4.

173.    Defendants willfully failed to notify Plaintiffs and the FLSA Collective of the requirements of their employment laws in order to facilitate their exploitation of Plaintiff's and the FLSA Collective Members' labor.

174.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known that failing to do so would financially injure Plaintiff and the Collective.

### COUNT IV.
### [Violations of the New York Labor Law—Nonpayment of Overtime Brought on behalf of the Plaintiffs and the Rule 23 Class]

175.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

176.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

177.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime at one and one-half times (1.5x) Plaintiff's and the Class Members' regular hourly rate or the minimum wage, whichever is greater.

178.    Defendants' failure to pay overtime violated the NYLL.

179.    Defendants' failure to pay overtime was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Failure to Pay Spread of Hours
### Brought on behalf of the Plaintiffs and Rule 23 Class]

180.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

181.    The NYLL requires employers to pay an extra hour's pay for every day that an employee

works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*,

and 12 NYCRR § 146-1.6.

182.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of the Plaintiffs and Rule 23 Class]

183.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

184.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30)

minutes for employees who work a shift of more than six hours extending over the noon day

meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at

least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later

than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning

and end of the shift for employees whose shift lasts more than six hours and starts between 1 p

m. and 6 a.m. NYLL § 162.

185.    Defendants failed to provide meal periods required by NYLL § 162 for every day that

Plaintiffs and the Rule 23 class work or worked.

186.    Though the Department of Labor commissioner may permit a shorter time to be fixed for

meal periods than hereinbefore provided, such permit must be in writing and be kept

conspicuously posted in the main entrance of the establishment. No such permit is posted.

187.    Defendants' failure to provide the meal periods required by NYLL §162 was not in good

faith.

## COUNT VII.
**[Violation of New York Labor Law—Failure to Keep Records
Brought on behalf of the Plaintiffs and Rule 23 Class]**

188.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

189.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for

a period of not less than six years, as required by 12 NYCRR § 146-2.1.

190.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including

loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest,

costs and attorneys' fee, pursuant to the state law.

191.    Upon information and belief, Defendants failed to maintain adequate and accurate written

records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their

exploitation of Plaintiffs' labor.

192.    Defendants' failure to maintain adequate and accurate written records of actual hours

worked and true wages earned by Plaintiffs were not in good faith.

## COUNT VIII.
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
Brought on behalf of the Plaintiffs and Rule 23 Class]**

193.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

194.    The NYLL and supporting regulations require employers to provide written notice of the

rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

195.    Defendants intentionally failed to provide notice to employees in violation of NYLL § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

196.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact, including when Plaintiffs' schedules and pay rates changed.

197.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. NYLL § 198(1-b).

### COUNT IX.
**[Violation of New York Labor Law—Failure to Provide Pay Stub
Brought on behalf of the Plaintiffs and Rule 23 Class]**

198.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

199.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

200.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after

each Plaintiff's payday.

201.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiffs together with costs and attorneys' fees pursuant to New York Labor Law. NYLL § 198(1-d).

## COUNT X.
### [Violation of New York Labor Law—Failure to Provide Termination Notice
### Brought on behalf of the Plaintiffs and Rule 23 Class]

202.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

203.    The NYLL and supporting regulations require employers to provide written notice, within five (5) working days of an employee's termination, of an employee's exact date of termination and of the cancellation of any employee benefits. NYLL § 195-6.

204.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to notifying each Plaintiff, and similarly situated employee, of their dates of termination and of the cancellation of any employee benefits.

205.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, appropriate damages which shall include medical expenses which were not covered by the employer's insurer by virtue of his termination of the employee's policy or failure to remit premiums. NYLL § 217-7(b).

## COUNT XI.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Bicycle/
### Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs
### Brought on behalf of the Plaintiffs]

206.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

207.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

208.    Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their delivery vehicle.

209.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

210.    Plaintiffs purchased, maintained and repaired the vehicle at their own expense.

211.    Plaintiffs performed these deliveries for the sole benefit of the Defendants.

212.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of batteries and/or gasoline and/or the maintenance of the vehicle.

213.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

214.    Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries.  As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

215.    Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## COUNT XII.
### [Violations of the Internal Revenue Code—Fraudulent Filing of IRS Returns Brought on behalf of the Plaintiffs]

216.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

217.    26 USC § 7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

218.    Due to Defendants' violations of 26 USC § 7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

### COUNT XIII.
### [Violations of the New York General Business Law—Deceptive Acts and Practices Brought on behalf of the Plaintiffs]

219.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

220.    NY General Business Law § 349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

221.    Due to Defendants' violations of NYGBS § 349, Plaintiffs Are entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

222.    Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporations to recover wages owed as employees of the corporations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

      a.      Certification of this case as a collective action pursuant to FLSA;

      b.      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action members;

      c.      A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

      d.      An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

      e.      An award of compensatory damages equal to the unpaid minimum wage, overtime, and spread of hours due to Plaintiff and the Collective under FLSA, and to Plaintiff and the Class under the NYLL, plus punitive and/or liquidated damages equal to compensatory damages under the New York Wage Theft Prevention Act for Defendants' willful failure to pay minimum wage, overtime, and spread of hours;

      f.      Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire notice detailing rates of pay and payday;

g.      Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that list employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

h.      Reimbursement of reasonable out-of-pocket costs sustained by Plaintiff and similarly situated delivery couriers in the purchase, maintenance, and repair of their delivery vehicles in direct service of Defendants;

i.      An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

j.      The costs and disbursements of this action;

k.      An award of prejudgment and post-judgment interest;

l.      Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety (90) days after expiration of the time to appeal with no appeal then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL § 198(4).

m.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: December 3, 2017                    TROY LAW, PLLC
       Flushing, NY                        *Attorneys for the Plaintiff, proposed FLSA*
                                           *Collective and potential Rule 23 Class*


                                            /s/ John Troy
                                           John Troy (JT 0481)
                                           41-25 Kissena Boulevard, Suite 119
                                           Flushing, NY 11355
                                           Tel (718) 762-1324

johntroy@troypllc.com